## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

EDITH CAROLYN FRYAR, ET AL.                                  PLAINTIFFS

V.                                        CAUSE NO.: 3:08CV63-SA-SAA

SAV-AMIL, LLC, ET AL.                                        DEFENDANTS

## FINAL JUDGMENT

The non-jury trial of this case was commenced on August 31, 2009. The Plaintiffs, Edith

Carolyn Fryar, the Robert B. Fryar Residuary Trust, and Patrick B. Mason, Trustee, ("the Fryars")

offered as witnesses Sean Akins, Steve Hammack, Alan Nunnelee, Pat Mason, Rhonda Allred, Gale

Jumper, Betty Rishel, Edith Carolyn Fryar, Robert Allen Fryar, and Eugene Gifford. The

Defendants, Sav-Amil, Inc., Alan Nunnelee, and Steve Hammack, ("Sav-Amil") rebutted with the

live testimony of Steve Hammack and Jim Kloac, by deposition.

Prior to the close of their case-in-chief, Plaintiffs moved to amend the pleadings to conform

with the evidence presented during trial. The Plaintiffs also moved for this Court to dismiss the

Defendants' counterclaim. The Court took the case under advisement. The parties have submitted

post-trial briefs.

The following constitutes the findings of fact and conclusions of law reached by this court

pursuant to Federal Rule of Civil Procedure 52:

*Findings of Fact*

The Robert B. Fryar Sawmill commenced operations in 1954 in the Dumas community of

Tippah County. Upon Robert B. Fryar's death in September of 1999, his will provided for the

dispersion of real estate with $650,000 worth of property going to his widow, Edith Carolyn Fryar,

and the rest placed in a residuary trust for the benefit of Edith Carolyn Fryar and her children.

Robert Allen Fryar, Robert B. Fryar's son, began operating the sawmill in Tippah County after his father's death. Between 1999 and 2004, the sawmill sought and obtained a substantial loan from the Federal Land Bank and a smaller loan from the Small Business Administration ("SBA"). In 2004, Robert Allen Fryar began looking for alternate financial assistance for the sawmill's continued operation. On November 5, 2004, an Agreement was signed whereby Alan Nunnelee agreed to purchase approximately 3,600 acres of real property from Robert Allen and Edith Carolyn Fryar for $1.7 million. In that Agreement, Robert Allen Fryar and Edith Carolyn Fryar were given a buy back/right of first refusal. The November 5, 2004, document also contained provisions providing that the buyer would pay taxes and closing costs on the transaction. Thereafter, the parties executed leases regarding the sawmill property and equipment. The Fryars agreed to pay Nunnelee $1,000 per month to rent the property on which the sawmill was situated and the equipment necessary for the sawmill's operation. Subsequent to that agreement, Alan Nunnelee advanced over $216,000 to Robert Allen Fryar to cover operating costs of the sawmill.

On December 30, 2004, Edith Carolyn Fryar, Pat Mason, Trustee of the Robert B. Fryar Residuary Trust, Alan Nunnelee, and Steve Hammack gathered in the law office of Gifford, Allred, Tennison, and Smith to close a deal conveying 3,508 acres from the Robert B. Fryar Residuary Trust to Sav-Amil, an entity formed by Steve Hammack and Alan Nunnelee. That Agreement did not include a buy back or right of first refusal provision. Moreover, the contract and attendant closing documents evidenced that the Plaintiffs paid the closing costs, attorneys' fees, and ad valorem taxes. The December 30, 2004, contract price for the 3,508 acres of land was $1.98 million which included a full satisfaction of the Robert B. Fryar Sawmill's Federal Land Bank and Small Business Administration loan obligations. The Fryars also agreed to lease the sawmill property and equipment

2

for $2,500 a month. Rhonda Allred, the attorney closing the December 30, 2004, contract testified that she was not aware of the November Agreement until October of 2005 or early 2006.

In March of 2006, the parties reconvened and entered into a Cancellation of Lease Agreement terminating the Fryar's monthly rental of the sawmill and its equipment. Thereafter, on April 12, 2006, Robert Allen Fryar, Edith Carolyn Fryar, Alan Nunnelee, and Steve Hammack signed a First Right of Refusal with Option to Purchase concerning certain tracts of property, excluding the sawmill property, owned by Robert B. Fryar prior to his death.

Sav-Amil thereafter issued to Robert Allen Fryar a series of Notices of Right of First Refusals beginning in April of 2006. Neither Robert Allen Fryar nor Edith Carolyn Fryar elected to purchase those properties at issue in the Notices. Indeed, there was testimony at trial that the Fryars would have been unable to purchase any property offered even if rights of first refusal had been issued from November 2004.

On July 12, 2007, Edith Carolyn Fryar attached *lis pendens* to property in Pontotoc and Alcorn counties relating to a lawsuit to set aside conveyances made by Sav-Amil. On January 14, 2008, Plaintiffs also attached *lis pendens* to property in Alcorn, Benton, Lafayette, Prentiss, Pontotoc, Tippah, and Union counties in Mississippi, as well as Harden and McNairy counties in Tennessee.

Plaintiffs filed this lawsuit in the Circuit Court of Tippah County, which the Defendants removed to federal court. Plaintiffs claim that Sav-Amil, Alan Nunnelee, and Steve Hammack breached the November 2004 contract, breached the duty of good faith and fair dealing, breached an implied in fact contract, intentionally inflicted emotional distress, and converted for their use the Robert B. Fryar Sawmill's dry kiln. At the trial of this matter, Plaintiffs moved to conform the

pleadings to the evidence presented.

Based on the liberal standard of amendment set forth in the Federal Rules of Civil Procedure, the Court hereby GRANTS Plaintiffs' *ore tenus* Motion to Amend the Pleadings. See Fed. R. Civ. P. 15(b)(1) (requiring courts to "freely permit an amendment"). Accordingly, Plaintiffs assert that based on the evidence presented at trial, they have additional claims of fraudulent inducement, and procedural and substantive unconscionability.

Defendants counterclaimed against Plaintiffs for slander of title as a result of the *lis pendens* notices placed on property conveyed under the December contract. Plaintiffs moved at the trial of this matter to dismiss that claim.

*Conclusions of Law*

*Contractual Claims*

Plaintiffs contend the December Agreement cannot be enforced because it is unconscionable. Thus, Plaintiffs assert, the November Agreement required the Defendants to provide rights of first refusal, and their failure to do so resulted in a breach of the November contract.

Under Mississippi law, unconscionability can either be substantive or procedural. West v. West, 891 So. 2d 203, 213 (Miss. 2004). Procedural unconscionability goes to the "formation of the contract." Id. A plaintiff may prove that an agreement is procedurally unconscionable by showing a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms. See Carson v. Higbee Co., 149 Fed. Appx. 289, 293 (5th Cir. 2005) (citing East Ford, Inc. v. Taylor, 826 So. 2d 709, 714 (Miss. 2002)).

At the trial, Edith Carolyn Fryar testified that no one explained the December 30 contract to

her, and that if she had known there was no buy back provision, she would not have signed. She acknowledged that she did not read the documents, did not ask anyone to read them to her, and voiced no objection prior to signing. She admitted that she could have asked for help but did not. She further testified that she routinely had Robert Allen Fryar or another of her children read and explain important documents to her prior to signing. Moreover, she admitted that Robert Allen Fryar had indeed done that very thing prior to signing the November Agreement.

At trial, Plaintiffs failed to prove that Edith Carolyn Fryar was in any way prevented from consulting Robert Allen Fryar, Pat Mason, or Sean Akins, her attorney. Edith Carolyn Fryar had the opportunity to ask questions, have the documents read to her, and walk out if she did not agree with the terms. The record is clear that she did not exercise those rights. Thus, Plaintiffs' assertion of procedural unconscionability fails.

Likewise, Plaintiffs' substantive unconscionability argument fails. "Substantive unconscionability occurs when the terms of the agreement are so one-sided that no one in his right mind would agree to its terms." West, 891 So. 2d at 213 (citation omitted). The terms of the December Agreement confer a mutual benefit to both parties. Thus, this Court finds the December 30 contract was not so one-sided as to constitute substantive unconscionability.

A subsequent agreement of the parties can discharge any previously entered into contract. See Farm Servs., Inc. v.Oktibbeha County Bd. of Super., 860 So. 2d 804, 810 (Miss. 2003) (citing Kelso v. McGowan, 604 So. 2d 726, 731 (Miss. 1992)); Pres., Direc. & Co. of Comm. Bank v. Buckingham's Ex'rs, 46 U.S. 317, 12 L. Ed. 169 (1847) (subsequent contracts between the same individuals, relative to the same subject-matter, control, modify, or extinguish a former one). Indeed, once a court determines the terms of the discharging agreement, the court is "no longer

interested in the terms of the antecedent contract for purposes of enforcement of them, in so far as those terms have been nullified by the new agreement." Farm Servs., 860 So. 2d at 810.

"For a subsequent agreement to modify an existing contract, the later agreement must, itself, meet the requirements for a valid contract." Id. (citations omitted). While a "written contract may be modified by a subsequent agreement, . . . the law of this state is that such an agreement must be supported by new or additional consideration." Iuka Guar. Bank v. Beard, 658 So. 2d 1367, 1372 (Miss. 1995) (citing Edrington v. Stevens, 114 So. 387, 389 (1927)). Consideration is sufficient if there is any benefit to the promisor or any loss, detriment, or inconvenience to the promisee. Jim Murphy & Assocs. v. LeBleu, 511 So. 2d 886, 891 (Miss. 1987); Miller v. Bank of Holly Springs, 95 So. 129, 130 (1922). The December Agreement is supported by legally sufficient consideration and can stand on its own. The December contractual terms, therefore, supplant the November contractual terms.

The contracting parties to the November Agreement were Edith Carolyn Fryar, Robert Allen Fryar, and Alan Nunnelee. The December Agreement contained the proper parties for the conveyance of the subject property: Pat Mason, Trustee of the Residuary Trust, Edith Carolyn Fryar, and Alan Nunnelee and Steve Hammack on behalf of Sav-Amil. The November Agreement $1.7 million selling price was not the price closed on in December. However, the December 30 contract contained the dollar amount that comported with the closing. The November Agreement also lacked specificity in acreage conveyed. The December contract stated the exact acreage and had the legal descriptions attached thereto. Thus, the December contract is the most recent statement of the intentions of the parties.

As further evidence of the parties' intent not to be bound by prior negotiations, the December

Agreement contains the following clause: "This Sales Contract constitutes the complete agreement of the parties and hereby incorporates all oral agreements of the parties." The Mississippi Supreme Court has cited with approval a Sixth Circuit case which held:

> Merger clauses are routinely incorporated in agreements in order to signal to the courts that the parties agree that the contract is to be considered completely integrated. A completely integrated agreement must be interpreted on its face, and thus the purpose and effect of including a merger clause is to preclude the subsequent introduction of evidence of preliminary negotiations or of side agreements in a proceeding in which a court interprets the document.

B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So. 2d 483, 490 (Miss. 2005) (quoting Sec. Watch, Inc. v. Sentinel Sys., Inc., 176 F.3d 369, 372 (6th Cir. 1999) (citations omitted)).   "By its very definition, an integration or merger clause negates the legal introduction of parol evidence; it is a 'provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document.'" Condrey v. SunTrust Bank of Georgia, 429 F.3d 556, 564 (5th Cir. 2005) (quoting BLACK'S LAW DICTIONARY 683 (6th ed. 1983)).   Further, "the integration clause prevents provisions or obligations and prior agreements from being enforceable in [the subsequent agreement]." B. C. Rogers Poultry, 911 So. 2d at 490.

Moreover, contracting parties are bound as a matter of law by what they sign. See, e.g., Bailey v. Estate of Kemp, 955 So. 2d 777, 783 (Miss. 2007); Oaks v. Sellers, 953 So. 2d 1077, 1082 (Miss. 2007); Carter v. Citigroup, Inc., 938 So. 2d 809, 818 (Miss. 2006).  In Mississippi, a person is charged with knowing the contents of any document that he executes. Andrus v. Ellis, 887 So. 2d 175, 180 (Miss. 2004).  Further,  "[a] person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him." Id.  The Mississippi Supreme Court

has explained that "[t]o permit a party when sued on a written contract to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." Alliance Trust Co., Ltd. v. Armstrong, 186 So. 633, 635 (Miss. 1939).

Defendants were under no fiduciary relationship to advise Plaintiffs or make disclosures with regard to the December Agreement. See Miss. Credit Ctr. v. Horton, 926 So. 2d 167, 177 (Miss. 2006) ("Duties to disclose or to act affirmatively, such as explaining the terms of a contract, do not arise in arm's length transactions or under an ordinary standard of care. Rather, they arise only in fiduciary or confidential relationships."); Turner v. Terry, 799 So. 2d 25, 36 (Miss. 2001) ("[P]arties to an arms-length transaction are charged with a duty to read what they sign; failure to do so constitutes negligence."). Thus, the Defendants had no duty to explain things to the Plaintiffs or to protect Edith Carolyn Fryar or the Trust. Ballard v. Commercial Bank of DeKalb, 991 So. 2d 1201, 1208 (Miss. 2008); EquiFirst Corp.v. Jackson, 920 So. 2d 458, 463 (Miss. 2006) (rejecting contention that lender's closing attorney "had an obligation to explain the contracts to them" and further iterating that "nothing indicates that anyone prevented [the borrowers] from reading the documents or asking any questions").

Edith Carolyn Fryar testified that she did not read the contract of December 30, 2004, prior to signing. However, she did sign that document. Thus, she is charged with the knowledge of the contents of the contract. That December contract expressly provided that it was to be construed as the complete agreement of the parties. Plaintiffs had the opportunity to read the document on December 30 prior to signing; Pat Mason, the Trustee and lawyer, was present at the signing; Edith Carolyn Fryar had access to Sean Akins, the Fryar family lawyer; Edith Carolyn Fryar's son was

present and could have explained the terms of the contract to her.  The Plaintiffs could have refused the contract and walked away if it was not what they intended to sign.  However, the Plaintiffs did not object and did not walk away.  Edith Carolyn Fryar and the Trustee signed the December contract.  Thus, this Court will enforce that contract.

Even if this Court were to look at the circumstances surrounding the formation of the November and December contracts, as the Plaintiffs request, the Court is unpersuaded that the outcome would be any different.  The testimony at trial was inconsistent, at best.   There was no consensus among the witnesses as to what was discussed during the conference call with Steve Hammack or during the December 30 closing, or even who was present at either of the two events.  Betty Rishel claims she was present for the teleconference with Steve Hammack in Robert Allen Fryar's office.  She further testified that Robert Allen Fryar, Gale Jumper, and Edith Carolyn Fryar were also present.   Gale Jumper did not recall participating in a conference call with Steve Hammack, never heard Steve Hammack or Alan Nunnelee offer a right of first refusal, and never heard Edith Carolyn Fryar or Robert Allen Fryar reference any buy back or right of first refusal provision.

Rhonda Allred, the closing attorney, testified that the following were present at the December closing: Rhonda Allred; Diane Graves, her paralegal; Gene Gifford; Pat Mason; Edith Carolyn Fryar; Robert Allen Fryar; Gale Jumper; Betty Rishel; Jim Kloac; and Steve Hammack and Alan Nunnelee.  Gale Jumper stated that she was not present at the December 30, 2004, closing.  She testified that she was not in the waiting room at Gifford, Allred, Tennison, and Smith, and did not see the Defendants on December 30.   Further, Betty Rishel testified that she was not present at the closing on December, 2004.  Jim Kloac stated that Rhonda Allred, Diane Graves, Gene Gifford, Edith

Carolyn Fryar, Robert Allen Fryar, Pat Mason, Alan Nunnelee, Steve Hammack, and their banker from Alabama were at Gifford, Allred, Tennison, and Smith for the closing. Robert Allen Fryar named those present as Edith Carolyn Fryar, himself, Jim Kloac, Steve Hammack, Alan Nunnelee, Matt Cooper, the banker from Alabama, and an airplane pilot.

Allred additionally remarked that she explained all documents to the Fryars prior to signing. Gene Gifford stated that Pat Mason went over the December 30 contract with Edith Carolyn Fryar prior to her signing. Jim Kloac noted that the Fryars met with Mason for a lengthy period of time prior to signing, and that Rhonda Allred went over the documents in detail with the buyer and seller. Edith Carolyn Fryar testified that no one explained the December 30 document to her prior to her signing.

Pat Mason testified that Robert Allen Fryar told him at the December 30 closing that the contract had a buy back provision. Steve Hammack contended that Pat Mason explained to Edith Carolyn Fryar that she was selling her land with the December 30 document. Robert Allen Fryar was adamant that Edith Carolyn Fryar declared that she would not sell her land in front of Gene Gifford and Rhonda Allred. Allred had no memory of a right of first refusal mentioned by Robert Allen Fryar or Edith Carolyn Fryar and did not remember Edith Carolyn Fryar saying that she did not want to sell her land. Kloac had no recollection of Edith Carolyn Fryar saying she did not want to sell the land or of either Robert Allen Fryar or Edith Carolyn Fryar asking for a right of first refusal.

After reviewing the transcript and on the basis of the witnesses' testimony at trial, there is no consistent or credible testimony to support Plaintiffs' theories. In light of the inconsistencies in testimony, and based on this Court's duty to weigh credibility among the witnesses, even if

evaluating the totality of the circumstances of the formation of the contracts, Plaintiffs are unable to carry their burden.

Plaintiffs attempt to discount the December Agreement by alleging they were fraudulently induced to sign. "Fraud in the inducement arises when a party to a contract makes a fraudulent misrepresentation, i.e., by asserting information he knows to be untrue, for the purpose of inducing the innocent party to enter into a contract." Lacy v. Morrison, 906 So. 2d 126, 129 (Miss. Ct. App. 2004) (citing Great S. Nat'l Bank v. McCullough Envtl. Servs. Inc., 595 So. 2d 1282, 1289 (Miss. 1992)). To establish fraud in the inducement, a party must prove the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

Id. Plaintiffs' burden with respect to their claims of fraud and misrepresentation is a heavy one. One seeking to prove fraud must produce clear and convincing evidence. See, e.g., Haygood v. First Nat'l Bank of New Albany, 517 So. 2d 553, 555 (Miss. 1987); Haynes v. AVCO Sec. Corp., 299 So. 2d 198, 201 (Miss. 1974).

To the extent that Plaintiffs' claim is premised on their mistake that the December Agreement contained a right of first refusal, that claim is denied. As a matter of law, one may not reasonably rely on oral representations, whether negligently or fraudulently made by the lender, which contradict the plain language of the documents. See Rankin v. Brokman, 502 So. 2d 644, 646 (Miss. 1987) (A plaintiff's reliance on an allegedly fraudulent representation, concealment, or non-disclosure is not reasonable as a matter of law if the representation is contradicted by the written terms of a written contract he signed). "[A] person is under an obligation to read a contract before signing it, and will

not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber Co., Inc., 584 So. 2d 1254, 1257 (Miss. 1981).

Plaintiffs' contention that Sav-Amil induced them into conveying the property with the promise that their land would not be sold is also denied. The testimony at trial regarding the alleged misrepresentation was inconsistent and not credible. Robert Allen Fryar testified to a conference call placed by Steve Hammack to himself, Edith Carolyn Fryar, Gale Jumper, and Betty Rishel. In that conversation, Robert Allen Fryar stated that Steve Hammack declared he would never sell the Fryar land if they sold it to him. Edith Carolyn Fryar testified that she also heard the statement. Steve Hammack denies making that promise, and Gale Jumper did not recall being present at the meeting. Plaintiffs did not prove by clear and convincing evidence that they were fraudulently induced into selling their land. The Court is not clearly convinced that the representation that the land would not be sold was actually made. Thus, the Court finds for the Defendants as to Plaintiffs' fraudulent inducement claim.

The formation of the December contract was not tainted by procedural unconscionability or fraud. Moreover, that Agreement is a valid contract governing the same subject matter as the November Agreement; thus, the December contract provisions supplant the antecedent contract between the parties. The December contract also contains a merger clause precluding this Court from examining extrinsic evidence of the parties' intent. Based on the unambiguous terms of the December contract, and the parties' signatures on that document, the Court concludes that the parties intended to be bound by that Agreement. The December contract has no right of first refusal provision. Therefore, the Court finds for the Defendants as to Plaintiffs' breach of contract, implied

in fact contract, and good faith and fair dealing claims; promissory estoppel; fraudulent inducement; unconscionability; and intentional infliction of emotional distress.

*Conversion*

The Mississippi Supreme Court has held that "[t]o make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or the defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." Smith v. Franklin Custodian Funds, Inc., 726 So. 2d 144, 149 (Miss. 1998). "There is no conversion until the title of the lawful owner is made known and resisted or the purchaser exercises dominion over the property by use, sale or otherwise." Miss. Motor Fin., Inc., v. Thomas, 149 So. 2d 20, 20 (Miss. 1963).

The testimony at trial by Robert Allen Fryar and Steve Hammack established that in March of 2005, Robert Allen Fryar sold the dry kiln to Steve Hammack. Thus, Plaintiff failed to prove a wrongful possession by the Defendants by a preponderance of the evidence.

*Lis Pendens*

Defendants counterclaim that Plaintiff slandered their title by filing the *lis pendens* notices on the title of property.

> "Slander of title" is a phrase commonly employed to describe words or conduct which bring or tend to bring in question the right or title of another to particular property, as distinguished from the disparagement of the property itself.
> . . .
> "One who falsely and maliciously publishes matter which brings in question or disparages the title to property, thereby causing special damage to the owner, may be held liable in a civil action for damages . . . ."

Walley v. Hunt, 54 So. 2d 393, 396 (Miss. 1951) (quoting 33 Am. Jur. at 311)). The Mississippi Supreme Court has recognized that liability for slander of title may also be predicated on the filing

and recording of a false instrument purporting to affect the title to property, or on the execution, wilful acceptance, and malicious recordation of a deed which falsely declares the title of the property involved to be in a person other than the true owner. Id. at 396. Indeed, the "malicious filing for record of an instrument which is known to be inoperative, and which disparages the title to land, is a false and malicious statement, for which the damages suffered may be recovered." Id. (citations omitted).

*Lis pendens* is a notice, recorded in the chain of title to real property, required or permitted in some jurisdictions to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome. BLACK'S LAW DICTIONARY 950 (8th ed. 2004). Based on the evidence presented at the trial of this matter, the Court cannot conclude that Plaintiffs filed the *lis pendens* maliciously. The proof established that Plaintiffs believed there to be a justifiable controversy over the ownership of the land. Moreover, Defendants failed to prove damages sustained as a result of the *lis pendens* filings. Accordingly, Plaintiffs' Motion to Dismiss the Counterclaim is GRANTED.

### *Conclusion*

At the three day trial of this matter, Plaintiff failed to prove by a preponderance of the evidence that the November Agreement, containing the right of first refusal, should control the parties' actions.

> In Mississippi, a person is charged with knowing the contents of any document that he executes. A person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.

Andrus, 887 So.2d at 180-81 (citations omitted). Accordingly, the Court finds for

the Defendants as to all of Plaintiffs' contractual claims.

The testimony elicited at trial overwhelmingly proved that Robert Allen Fryar sold the dry kiln to Steve Hammack prior to the institution of this lawsuit. Therefore, Plaintiffs' conversion claim fails.

The Court finds for the Plaintiffs as to Defendants' counterclaim for slander of title. The *lis pendens* at issue in this case were not attached to the property maliciously. However, Plaintiffs are directed to cancel those filings within thirty days as this litigation is now terminated. The Court retains jurisdiction over this matter to enforce the directive. Failure to cancel those filings may result in the imposition of sanctions.

After careful consideration of all evidence presented in this case, the Court finds for the Defendants as to Plaintiffs' claims, and for the Plaintiffs as to Defendants' claims.

SO ORDERED, this the 10th day of December, 2009.

**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**